**In re ROSS.**

[Cite as *In re Ross* (1995), 107 Ohio App.3d 35.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

95APF04–496.

Decided Oct. 24, 1995.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Keith A. Cornwell,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *Allen V. Adair,* Assistant Public Defender, for appellant.

TYACK, Judge.

On October 3, 1994, an altercation occurred between middle-school students Amber Wright and Jemekea Ross. Amber sustained a wound to her neck and was treated at a nearby hospital. As a result, a complaint was filed in the Juvenile Branch of the Franklin County Court of Common Pleas, Division of Domestic Relations, against thirteen-year-old Jemekea, alleging that she was a delinquent minor by reason of her having committed felonious assault.

On November 15, 1994, an adjudicatory hearing commenced before a juvenile court referee. In his report and recommendation filed December 12, 1994, the referee concluded that Jemekea did not commit felonious assault, but did commit the lesser-included, misdemeanor offense of assault. The referee's report further recommended that a dispositional hearing be conducted on December 15, 1994.

On November 29, 1994, prior to the filing of the referee's report, Amber's mother, Inger Anderson ("Anderson"), filed objections to the referee's findings and recommendations announced in open court following the adjudicatory hear-

ing. Anderson's relevant objections were primarily lodged at the referee's failure to find "from sufficient testimony" that Jemekea committed the more serious offense of felonious assault. Anderson's "certificate of service" indicates that she served only the "Juvenile Prosecutors" and neither defense counsel nor the alleged delinquent minor.

Anderson's objections came on for a hearing before the assigned trial judge on December 14, 1994, two days after the referee's report was filed. The state was represented by two assistant prosecuting attorneys; neither Jemekea nor her counsel was present. The transcript of this hearing indicates that the objector, Anderson, did not provide the trial judge with a copy of the transcript of the hearing conducted before the referee, and the judge declined to hear additional evidence proffered by her. A representative of the prosecuting attorney's office clarified that "the objection was not filed on behalf of the State." The assistant prosecutor informed the court that objections would be filed by her office pending receipt of the referee's report.

On December 15, 1994, a "decision and judgment entry" was filed, journalizing the court's resolution of Anderson's objections. The entry substantively reads, in its entirety:

"This matter is before the Court upon Inger R. Anderson's objections to the Report of the Referee.

"The Court overrules such objections and adopts the Report of the Referee and makes the recommendations contained therein an order of the Court."

On the same day, December 15, 1994, the referee conducted a dispositional hearing and rendered a report in which he recommended, *inter alia*, that Jemekea be placed on probation as a result of her committing assault. A standardized form entry was signed by the assigned trial judge to journalize the court's adoption of the referee's report and recommendation.

On December 21, 1994, an assistant prosecuting attorney not previously involved in the case timely filed objections to the referee's report on behalf of the state. The prosecution essentially argued, as did Anderson, that the evidence adduced at trial (as revealed by the forthcoming transcript of the adjudicatory hearing) was sufficient to establish that Jemekea committed felonious assault. Alternatively, the prosecution argued that the evidence established that Jemekea had committed the lesser-included offense of attempted felonious assault.

On March 1, 1995, the trial judge conducted a brief hearing on the prosecution's objections. The state was represented by an assistant prosecuting attorney, and Jemekea was represented by counsel. In a decision and judgment entry filed March 3, 1995, the judge sustained the objections to the extent that he found Jemekea guilty of attempted felonious assault.

Jemekea Ross ("appellant") has timely appealed, assigning two errors for our consideration:

"FIRST ASSIGNMENT OF ERROR: The court erroneously sustained the prosecuting attorney's objections to the report and recommendations of the referee after it had previously overruled objections by the victim's parent raising the same issues.

"SECOND ASSIGNMENT OF ERROR: The evidence does not support the finding of delinquency based on the predicate offense of attempted felonious assault."

By her first assignment of error, appellant contends that the trial judge erred in "sustaining" the prosecution's objections to the referee's report after the same judge had previously overruled the same substantive objection to the same referee's report raised by the victim's mother. We construe appellant's first assignment of error to pose the threshold procedural question as to whether the court erred in *addressing* the second set of objections; the propriety of *sustaining* the objections would be more appropriately addressed in a discussion of the sufficiency and weight of the evidence.

Our research indicates, and both parties to this appeal recognize, that the issue they address is one of first impression. Preliminarily, an overview of certain applicable rules of juvenile procedure pertaining to referees and the objections process is appropriate.

Juv.R. 40 governs the appointment, powers, and duties of referees in juvenile court proceedings. With respect to the preparation of reports, Juv.R. 40(D)(1) provides as follows:

"*Contents and Filing.* The referee shall prepare a report upon the matters submitted by the order of reference or otherwise. The referee shall file the report with the judge and forthwith provide copies to the parties. The report shall set forth the findings of the referee upon the case submitted, together with a recommendation as to the judgment or order to be made. The referee shall file with the report a transcript of the proceedings and of the evidence only if the court so directs."

Juv.R. 40(D)(2) sets forth the procedure by which a party may object to the referee's report and recommendation:

"*Objections to Report.* Within fourteen days of the filing of the report, a *party* may serve and file written objections to the referee's report. The objections shall be considered a motion. Objections shall be specific and state with particularity the grounds of objection. Upon consideration of the objections, the court may adopt, reject, or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself." (Emphasis added.)

Juv.R. 2(X) defines "party" as follows:

" 'Party' means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and *any other person specifically designated by the court.*" (Emphasis added.)

Juv.R. 40(D)(5) addresses the effectiveness of a referee's report:

"*When Effective.* The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolution of any issues. However, the court shall determine whether there is any error of law or other defect on the face of the referee's report even if no party objects to an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee."

Appellant argues that the trial court's adoption of the referee's report made that report the final judgment of the court as to the degree of culpability. Therefore, appellant contends that the trial court's subsequent sustaining of the state's objections, substantively identical to those relevant objections raised by Anderson, violated principles of double jeopardy, *res judicata,* equal protection, and due process.

The state responds that the trial court's judgment was stayed pending resolution of the state's timely objections; once the state's objections were resolved, the judge was free to modify his earlier judgment. The state relies primarily upon the language of Juv.R. 40(D)(7), which provides, in pertinent part:

"*Permanent and Interim Orders.* The court may enter judgment on the basis of findings of fact contained in the referee's report without waiting for timely objections by the parties, but *the filing of timely written objections* to the referee's report *shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and thereby vacates, modifies, or adheres to the judgment previously entered.*" (Emphasis added.)

Having generally set forth the basic arguments of the parties, we are compelled to address a preliminary issue omitted or neglected by both. Since we find this issue to be dispositive of this appeal, we need not reach the merits of the constitutional issues indicated above.

The transcript of the December 14, 1994 objections hearing reveals that the trial judge, as well as representatives of the prosecuting attorney's office, was

aware of Anderson's failure to serve defense counsel with a copy of her objections. The transcript indicates that the assistant prosecuting attorneys present attempted neither to secure defense counsel's presence nor to have the hearing continued so that all interested parties could be heard. Instead, the state's position was (and remains) that Anderson was not a "party" within the purview of Juv.R. 2(X).

Arguably, the trial judge implicitly treated Anderson as a "party" by accepting and considering her written objections as properly filed, and allowing her to appear before him and argue her objections on the record. Further, he did not overrule her objections simply on the basis that they were improperly filed by a nonparty.

The transcript of the *ex parte* hearing evidences the details of Anderson's numerous grievances about the referee's findings and recommendations. The transcript is replete with Anderson's personal conjecture and opinions as to the events giving rise to the assault, her personal opinions as to the character and integrity of her victimized daughter, her knowledge of additional witnesses and hearsay statements as to the likely substance of their testimony, and her personal interpretation of the medical testimony and how it should have been construed. The mother of the alleged victim was simply allowed to vent her frustration and anger resulting from her complete dissatisfaction with the referee's findings and recommendations.

Notwithstanding the trial judge's apparent treatment of Anderson as a "party," the judge clearly did not properly comply with Juv.R. 2(X) by "specifically designat[ing]" Anderson a party. More significantly, the judge did not require of Anderson compliance with the customary formalities required of a "party" in the objections process. For example, the Ohio Rules of Civil Procedure, as well as the Franklin County Local Rules of Procedure for Juvenile Court, require that notice be given to *all* parties of the filing of objections and oral hearings scheduled thereon. Also required is an opportunity for the nonobjecting party to respond in writing to such objections. Specifically, Loc.R. 8 provides:

"All Objections shall be set for oral hearing by the moving party * * *. *Notice shall be made by the moving party on all other parties* * * *. Oral hearings may be waived *by agreement of all parties* * * *.

"*Memoranda Contra Objections may be filed by any party* within seven (7) days of the filing of said Objections." (Emphasis added.)

Quite simply, Anderson's status in this case was no more than that of mother of a state's witness; since Anderson was never properly made a party nor required to adhere to the formalities required of a party, we view her "objections" as a nullity of no legal significance.

In reviewing the improperly filed objections and conducting an *ex parte* hearing thereon, the judge allowed a nonparty witness to communicate extensively out of the presence of one of the parties, namely, the accused delinquent minor. This procedure raises significant questions regarding the appearance of unfairness of the proceedings.

Given the judge's ultimate resolution of the objections filed on behalf of the state, there arguably exists an appearance that one party (the state) gained an unfair advantage over the opposing party (appellant) through an *ex parte* communication involving the decisionmaker regarding the substantive merits of the matter in controversy.

Canon 2 of the Code of Judicial Conduct specifically admonishes judges to avoid even the appearance of impropriety. It is precisely this appearance which is proscribed and governed by Canon 3(A)(4) of the Code of Judicial Conduct, which provides:

"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.  * * * "

A similar proscription against *ex parte* communications applies to attorneys pursuant to DR 7–110(B) of the Code of Professional Responsibility.

The only means by which we may remedy this appearance of "tainted" proceedings is to vacate the adjudication of delinquency based upon the attempted felonious assault finding, and remand to another judge of the juvenile court for purposes of hearing and ruling on objections to the initial referee's report and recommendations.

We sustain the first assignment of error to the extent it submits that the trial court erred in addressing the objections.

Our disposition of the first assignment of error renders the second assignment of error moot.  See App.R. 12.

Having sustained the first assignment of error in part, this matter is reversed and remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DESHLER and HOLMES, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.